UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FUSIONSTORM, INC.,

        Plaintiff,

v.                                                                    Case No. 8:11-cv-1969-T-33AEP

PRESIDIO NETWORKED SOLUTIONS,
INC., *et al.*

        Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff FusionStorm, Inc. ("FusionStorm") brought this action against Defendants for violations of the Computer Fraud and Abuse Act and for breach of contract, tortious interference with business and contractual relations, and misappropriation of trade secrets (Dkt. No. 1). Defendants currently seek to compel FusionStorm to participate in arbitration or, alternatively, seek to dismiss this action (Dkt. Nos. 18, 22, 23, 24). Although it has agreed to proceed in arbitration with Defendants Michael Lytos ("Lytos"), David Duff ("Duff"), John Lotze ("Lotze"), Gina King ("King"), and Yandy Ramirez ("Ramirez") (collectively, the "Individual Defendants"), FusionStorm objects to arbitrating its claims against Presidio Networked Solutions, Inc. ("Presidio"). In addition, FusionStorm seeks to compel expedited discovery and to obtain other relief in this forum. For the reasons that follow, I recommend that the Individual Defendants' motions to compel arbitration be granted, Presidio's motion to compel arbitration be granted to the extent that the assigned arbitrator determine whether Presidio may participate in the pending arbitration between FusionStorm and the Individual Defendants, FusionStorm be

permitted to seek only injunctive relief in this forum as to all Defendants except King, the case be stayed as to all other claims, King be dismissed from this action, and the motions related to discovery be denied without prejudice.

## I. Background

FusionStorm operates as an information technology delivery company providing high-end and complex computer servers, storage area networking, and security hardware and software service and support (Dkt. No. 1 at 5). Presidio operates a competing information technology delivery company (*id*. at 6). The Individual Defendants formerly worked for FusionStorm and currently work for Presidio. As part of their employment with FusionStorm, the Individual Defendants executed various agreements detailing the terms of their employment (collectively, "Employment Agreements") (*id.*, Exhs. C-G). The Employment Agreements contained restrictive covenants, including, among other things, provisions prohibiting the disclosure of proprietary or confidential information as well as provisions regarding non-competition and non-solicitation (*id.*). FusionStorm contends the Individual Defendants breached those provisions at the behest of or with the assistance of Presidio thereby causing FusionStorm to institute the instant action to redress the harm caused by the alleged breaches. Essentially, FusionStorm contends Presidio engaged in an unlawful scheme using unfair methods of competition to expand its Tampa office by targeting FusionStorm's employees, including the Individual Defendants, and taking FusionStorm's business. According to FusionStorm, Presidio directed, aided, or abetted the conduct of the Individual Defendants in obtaining information from FusionStorm's

computer system, misappropriating trade secrets, and targeting FusionStorm's employees and usurping FusionStorm's business.

As a result, FusionStorm asserts claims against Defendants for violations of the Computer Fraud and Abuse Act and for breach of contract, tortious interference with business and contractual relations, and misappropriation of trade secrets (Dkt. No. 1). Prior to seeking redress in this forum against the Individual Defendants, however, FusionStorm did not engage in good-faith negotiations and failed to adhere to the arbitration provisions set forth in the Individual Defendants' Employment Agreements. Indeed, each Individual Defendant's Employment Agreement provides that any controversies, disputes, or claims arising out of the Employment Agreements must first be settled through good-faith negotiation and then, if left unresolved, by arbitration (*id.*). Specifically, the Non-Disclosure, Non-Competition, Non-Solicitation and Developments Agreement incorporated into the Offers of Employment for Lytos, Duff and Lotze, mandate:

> **H.     Arbitration.** Any controversy, dispute or claim arising out of or relating to this Agreement, shall first be settled through good faith negotiation. If the dispute cannot be settled through negotiation, the parties agree to binding arbitration administered by JAMS before one arbitrator in the JAMS Boston, MA location. The dispute will be settled pursuant to its Employment Arbitration Rules & Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("Policy"). Notwithstanding, no arbitrator will have the right or power to add to, subtract from or otherwise vary any of the terms of this Agreement or any other written employment policies of FusionStorm. The arbitrator may, in the Award (as defined in the Policy), allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude FusionStorm from seeking any other provisional remedies in aid of arbitration from a court of appropriate jurisdiction including but not limited

to injunction, restraining order, or any other remedy available [in] law or equity.

Dkt. No. 1, Exh. C at 24; Exh. D at 7; Exh. E at 9.[1]  Ramirez's Non-Disclosure, Non-Competition, Non-Solicitation and Developments Agreement contains a slightly different arbitration provision, which states:

> **H.    Arbitration.**  Any controversy, dispute or claim arising out of or relating to your employment, including but not limited to breach of this Offer, shall first be settled through good faith negotiation.  If the dispute cannot be settled through negotiation, the parties agree to binding arbitration administered by JAMS before one arbitrator and the arbitration will be held in Boston, MA[. T]he arbitration will be governed by the law of the Commonwealth of Massachusetts. FusionStorm will initially pay all arbitration costs with the exception of any cross complaints filed by you, and your answer fee.  Each party is responsible for their/its own attorney fees and costs.  The arbitrator will allow for reasonable discovery by both

---

[1]  Lytos, Duff and Lotze's offers of employment also contain substantially similar arbitration provisions, which state:

> **J.    Arbitration.**  Any controversy, dispute or claim arising out of or relating to your employment including but not limited to breach of this Offer, shall first be settled through good faith negotiation.  If the dispute cannot be settled through negotiation, the parties agree to binding arbitration administered by JAMS before one arbitrator in the JAMS Boston, MA location.  The dispute will be settled pursuant to its Employment Arbitration Rules & Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("Policy").  Notwithstanding, no arbitrator will have the right or power to add to, subtract from or otherwise vary the terms of this Offer or the written employment policies of FusionStorm.  The arbitrator may, in the Award (as defined in the Policy), allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.  Judgment on the Award may be entered in any court having jurisdiction.  This clause shall not preclude FusionStorm from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

*See* Dkt. No. 1, Exh. C at 4; Exh. D at 3-4; Exh. E at 3-4.

parties.   YOU UNDERSTAND THAT BY AGREEING TO
ARBITRATION, YOU ARE WAIVING ALL RIGHTS YOU MAY
HAVE TO A JURY OR COURT TRIAL.  All disputes will be settled
pursuant to Jams' [sic] Employment Arbitration Rules & Procedures and
subject to JAMS' Policy on Employment Arbitration Minimum Standards
of Procedural Fairness ("Policy").  All remedies and relief that would
otherwise be available in court will be available to both parties and
awarded by the arbitrator.  Notwithstanding, no arbitrator will have the
right or power to add to, subtract from or otherwise vary any of the terms
of this Offer or the written employment policies of FusionStorm.
Additionally, the arbitrator will not have the right to change the location of
the arbitration or the choice of law that governs this arbitration.  The
arbitrator may, in the Award (as defined in JAMS' Policy), allocate as
allowed by law all or part of the costs of the arbitration, including the fees
of the arbitrator and reasonable attorneys' fees of the prevailing party.  The
arbitrator's award will be in a writing that explains the essential findings
and conclusions of law on which the award is based and will be binding.
Judgment on the Award may be entered in any court having jurisdiction.
This clause shall not preclude either party from seeking
injunctive/declaratory relief or other provisional remedies in aid of
arbitration from a court of appropriate jurisdiction.

Dkt. No. 1, Exh. G at 7.[2]  The choice-of-law provisions in Lytos, Duff, Lotze, and Ramirez's

Employment Agreements dictate that the agreements shall be construed under and enforced in

accordance with the laws of the Commonwealth of Massachusetts (Dkt. No. 1, Exh. C. at 25;

Exh. D at 7; Exh. E at 9; Exh. G at 7).   King did not execute a Non-Disclosure, Non-

Competition, Non-Solicitation and Developments Agreement, but her offer of employment

contains the following arbitration provision:

> O.      Arbitration
>
>> 1. All disputes or controversies or claims of any kind arising out of,

---

[2]  Ramirez's offer of employment contains a nearly identical arbitration provision to
that found in Ramirez's Non-Disclosure, Non-Competition, Non-Solicitation and
Developments Agreement.  *See* Dkt. No. 1, Exh. G at 4.

relating to, or in connection with this Agreement will be resolved in binding arbitration, and the parties waive any right each may have to a jury or court trial. Arbitration will apply to disputes including, but not limited to:

a) Any claim under federal, state or local laws or regulations for unlawful retaliation or civil rights violations, wrongful termination of employment, violation of public policy or unlawful discrimination or harassment because of race, color, sex, national origin, religion, age, physical or mental disability or condition, marital status, sexual orientation or other legally protected characteristics;

b) Any and all claims arising out of any other federal, state or local laws or regulations relating to employment or employment discrimination;

c) Any and all claims arising out of any federal, state or local law or regulation regarding related [sic] to wages, leave, benefits or any other compensation under this Agreement;

d) Any and all claims arising out of any federal[,] state or local law or regulation for wrongful discharge of employment, breach of contract, both express and implied; breach of the covenant of good faith and fair dealing, both express and implied; negligent or intentional infliction of emotional distress; negligent or intentional misrepresentation; negligent or intentional interference with contract or prospective economic advantage; and defamation;

e) Any and all claims arising out of any federal, state or local law or regulation regarding or related to the interpretation, scope, effect, enforcement, termination, extension, breach, legality, remedies and other aspects of this Agreement or the conduct and communications of the parties regarding this Agreement and the subject matter of this Agreement and the jurisdiction of the arbitrator to hear the dispute;

f) Any other claim of any nature alleging a violation of law in connection with this Agreement and your employment or termination of employment by FusionStorm arising prior to, during or after that employment that might otherwise be subject to litigation; and

g) Any claim for damages or equitable remedies relating to the matters described in Section K ("Confidentiality").

2.  Any arbitration will be conducted in accordance with the rules of JAMS in San Francisco, California.  Notwithstanding these rules, any arbitration will provide for neutral arbitrators and allow for reasonable discovery by both parties.  All awards by the arbitrator will be in a writing that explains the essential findings and conclusions on which the award is based, will be binding and will be non-appealable, and judgment on the award of the arbitrator may be entered in any court having jurisdiction. The arbitrator may grant injunctions or other relief in any dispute or controversy.  No arbitrator will have the right or power to add to, subtract from or otherwise vary any of the terms of this Agreement or the written employment policies of FusionStorm.

3.  All remedies and relief that would otherwise be available in court will be available to the parties, as awarded by the arbitrator.  The costs and expenses of the arbitrators in any arbitration will be paid by FusionStorm; each party will pay its or his own legal fees and expenses, except as otherwise required by law.

Dkt. No. 1, Exh. F at 4-5.

By the instant motions, the Individual Defendants seek to compel arbitration pursuant to the terms of their Employment Agreements (Dkt. Nos. 18, 23, 24).[3]  Presidio also seeks  to compel arbitration with FusionStorm pursuant to arbitration provisions in the Individual Defendants' Employment Agreements (Dkt. No. 23) or, alternatively, to dismiss this action arguing that FusionStorm has failed to state a claim against it (Dkt. No. 22).   Finally, FusionStorm seeks to compel expedited discovery from Defendants (Dkt. No. 51), which Defendants oppose and for which Lotze seeks a protective order to prevent (Dkt. Nos. 54, 56,

---

[3]  To the extent Lytos, Duff, King, and Ramirez seek to dismiss this action based on FusionStorm's failure to engage in good-faith negotiations, that issue has become moot given the parties' in-person meeting in November at which those four Individual Defendants agreed not to raise or continue to raise the good-faith negotiation requirement as a defense to the instant lawsuit.  *See* Dkt. No. 43 at 1-2.  Accordingly, the motion to dismiss portion of Lytos, Duff, King, and Ramirez's motion (Dkt. No. 18) should be denied as moot.

63).

Given the various forms of relief sought by the parties, the Court held a hearing at which all the parties appeared and presented oral argument. During the hearing, the Court requested that the parties provide supplemental briefing regarding what effect Rule 6(f) of the JAMS Employment Arbitration Rules ("JAMS Rules")[4] had upon Presidio's participation in arbitration between the Individual Defendants and FusionStorm. The parties timely filed their supplemental briefs (Dkt. Nos. 73-76).

## II.    Discussion

### A.    Arbitration

The Federal Arbitration Act ("FAA") governs the arbitrability of disputes, *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983), and provides that a written agreement to arbitrate in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[5]  9 U.S.C. § 2.  Enacted in response to widespread judicial hostility to arbitration agreements, the FAA expresses a "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone*, 460 U.S. at 24; *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S.Ct. 1740, 1745 (2011).

---

[4]  JAMS Employment Arbitration Rules & Procedures, http://www.jamsadr.com/rules-employment-arbitration/ (last visited on April 23, 2012) (each Rule cited herein as JAMS Rule __).

[5]  Employment contracts, except those involving transportation workers, fall within the purview of the FAA. *See Circuit City v. Adams*, 532 U.S. 105, 119 (2001).

In construing arbitration agreements within the scope of the FAA, courts apply general state-law principles of contract interpretation but also afford due regard to the federal policy favoring arbitration. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 475-76 (1989) (internal citation omitted). Given this liberal policy in favor of arbitration, a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written arbitration agreement may petition a federal district court to compel arbitration in accordance with such agreement. 9 U.S.C. § 4. The FAA does not, however, confer a right to compel arbitration of any dispute at any time; rather, it confers only the right to obtain an order directing that arbitration proceed in the manner provided for in the arbitration agreement. *Volt,* 489 U.S. at 474-75 (citing 9 U.S.C. § 4).

Indeed, arbitration is a matter of contract. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. ___, 130 S.Ct. 2772, 2776 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes - but only those disputes - that the parties have agreed to submit to arbitration."). Though state law generally governs interpretation of arbitration provisions, the FAA imposes certain fundamental rules, including the principle that arbitration remains a matter of consent rather than coercion. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. ___, 130 S.Ct. 1758, 1773 (2010). Under the FAA, courts must therefore enforce arbitration provisions according to their terms. *Rent-A-Center*, 130 S.Ct. at 2776. Absent some ambiguity in the arbitration provision, the language of the provision defines the scope of the disputes subject to arbitration. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). If any doubts arise about

the scope of arbitrable issues, whether from the construction of the contract language itself or an allegation of waiver, delay, or other defense to arbitrability, courts should resolve those doubts in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25.

### i. Individual Defendants

As to the Individual Defendants' motions to compel arbitration, FusionStorm has agreed to and in fact begun a single consolidated arbitration with Lotze, Lytos, Duff, King and Ramirez under the JAMS Rules in Boston, Massachusetts (Dkt. No. 60, Exh. B). Accordingly, the Individual Defendants' motions to compel arbitration (Dkt. Nos. 18, 24) should be granted.

### ii. Presidio

By its motion to compel arbitration, Presidio seeks to join the arbitration currently pending between FusionStorm and the Individual Defendants. As Presidio argues, the causes of action FusionStorm seeks to assert against Presidio relate to the causes of action alleged against the Individual Defendants, derive from the contractual obligations the Individual Defendants owed to FusionStorm, and pertain to the allegations that the Individual Defendants acted in concert with or at the behest of Presidio. *See* Dkt. No. 23 at 3-4. Presidio therefore moves to compel FusionStorm to arbitrate its claims against Presidio in the same forum as the Individual Defendants, *i.e.* an arbitral forum. FusionStorm adamantly opposes Presidio's participation in the pending arbitration asserting that Presidio, as a non-signatory to the Employment Agreements, does not have any rights under those agreements and should not be permitted to prevent FusionStorm from asserting its rights against Presidio in this forum.

A non-party to an arbitration agreement may compel a party to arbitration if the relevant

state contract law allows the non-party to enforce the arbitration agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Here, the Individual Defendants' Employment Agreements[6] dictate that the law of the Commonwealth of Massachusetts governs the agreements (Dkt. No. 1, Exh. C. at 25; Exh. D at 7; Exh. E at 9; Exh. G at 7).[7] Massachusetts has adopted the Uniform Arbitration Act, which closely resembles the FAA. Mass. Gen. Laws ch. 251 §1 *et seq.*; *see Brennan v. King*, 139 F.3d 258, 266-67 (1st Cir. 1998) (discussing the Massachusetts Arbitration Act). Similar to the FAA, in Massachusetts, "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Mass. Gen. Laws ch. 251 § 1. When the parties agree to submit a dispute to arbitration, Massachusetts courts will generally enforce that agreement and decline to interfere with the arbitration process. *Sheriff of Middlesex County v. Int'l Brotherhood of Correctional Officers, Local RI-193*, 821 N.E.2d 512, 513 (Mass. App. Ct. 2005). Furthermore, where, as here, the arbitration provisions are extremely broad and written in the most general terms to encompass all disputes,

---

[6]    Unlike the other Individual Defendants, King's Employment Agreement did not have a choice-of-law provision (Dkt. No. 1, Exh. F). If the recommendations herein are accepted, the Court need not determine which state's law governs King's Employment Agreement as she is being compelled to arbitration. Moreover, her contract did not include language allowing for provisional remedies in aid of arbitration, and, thus, she should be dismissed from this action. *See infra* note 10.

[7]    Florida generally enforces choice-of-law provisions in contracts unless application of the chosen forum's law would contravene a strong public policy of the State of Florida. *See Mazzoni Farms, Inc. v. E.I. DuPont De NeMours & Co.*, 761 So. 2d 306, 311 (Fla. 2000).

11

controversies, or claims, the agreement to arbitrate should be construed as broadly as intended. *Barletta v. French*, 607 N.E.2d 410, 414 (Mass. App. Ct. 1993) ("We note, preliminarily, that the arbitration clause in all the joint venture agreements was in the most general terms ('All controversies ... arising out of or relating to this Agreement ...'), and we have previously said ... that a broad agreement to arbitrate 'should be construed as broadly as it was intended" (internal citation and footnote omitted); *see generally, Superadio Ltd. Partnership v. Winstar Radio Productions, LLC*, 844 N.E.2d 246, 252 (Mass. 2006) (noting that an arbitration provision which provided that "[a]ny dispute arising under the [a]greement, including but not limited to any dispute concerning payments due, shall be arbitrated under the rules of the [AAA]" was "all-encompassing"). Further, where a contract contains an arbitration provision, there is a presumption of arbitrability such that an order to arbitrate a particular grievance should not be denied unless a court could find with positive assurance that the arbitration provision is not susceptible of an interpretation which covers the asserted dispute. *Drywall Systems, Inc. v. ZVI Const. Co., Inc.*, 761 N.E.2d 482, 484 (Mass. 2002). Any doubts should be resolved in favor of coverage, especially where the clause is broad. *Id.* at 484-85.

Presidio and FusionStorm argue for and against application of the theory of equitable estoppel to allow or prevent Presidio from joining the arbitration. Under the explicit terms of the arbitration provisions, however, the decision as to whether Presidio should join the arbitration between the Individual Defendants and FusionStorm is a question for the arbitrator to decide. *See* Dkt. No. 1, Exhs. C-E, G. Since the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that particular dispute, the decision as to who has the

primary power to decide arbitrability depends upon what the parties agreed about that particular matter. *First Options*, 514 U.S. at 943. If the parties agreed to submit the arbitrability question to the arbitrator, the court should afford considerable leeway to the arbitrator. *Id.* Conversely, if the parties did not agree to submit the arbitrability question to the arbitrator, the court should decide the question independently. *Id.* To determine whether the parties agreed to arbitrate a certain matter, including arbitrability in general, courts should apply ordinary state-law principles governing the formation of contracts. *Id.* at 944. In making that determination, courts should not assume that the parties agreed to arbitrate arbitrability unless clear and unmistakable evidence exists evincing that the parties so agreed. *Id.*

In Massachusetts, courts interpreting a contract must give effect to the parties' intentions and construe the language in the contract to afford it a reasonable meaning wherever possible. *Shea v. Bay State Gas Co.*, 418 N.E.2d 597, 601 (Mass. 1981). Where the wording of a contract is unambiguous, a court must enforce the contract according to its terms. *Freelander v. G. & K. Realty Corp.*, 258 N.E.2d 786, 788 (Mass. 1970). In this instance, FusionStorm drafted the Employment Agreements, included binding arbitration provisions in the Employment Agreements, and required the Individual Defendants to execute the Employment Agreements. Within those binding arbitration provisions, FusionStorm explicitly incorporated the JAMS Rules. Indeed, parties may agree to limit the issues subject to arbitration, to arbitrate pursuant to specific rules, and to limit with whom a party will arbitrate its dispute. *Concepcion*, 131 S.Ct. at 1748-49. As a result, both FusionStorm and the Individual Defendants agreed to be bound by the procedures set forth in the JAMS Rules.

13

JAMS Rule 6(f) states:

 (f) Where a third party seeks to participate in an Arbitration already pending under these Rules or where a Party to an Arbitration under these Rules seeks to compel a third party to participate in a pending Arbitration, the Arbitrator shall determine such request, taking into account all circumstances the Arbitrator deems relevant and applicable.

Each of the situations delineated in JAMS Rule 6(f) are present in this case; namely, Presidio seeks to participate in the arbitration, and the Individual Defendants seek to compel Presidio to participate in the arbitration. To that end, in December, Lytos, Duff, King, and Ramirez submitted a request to the assigned JAMS ADR seeking to compel Presidio to participate in their arbitration pursuant to JAMS Rule 6(f). *See* Dkt. No. 60 at 2-3. Presidio similarly requested to participate in the arbitration pursuant to JAMS Rule 6(f). *See id.*; *see also* Dkt. No. 80 at 3. Notwithstanding the incorporation of the JAMS Rules into its arbitration agreements, FusionStorm objected to Presidio participating in the arbitration and, instead, seeks to present its claims against Presidio in this forum.

By incorporating the JAMS Rules, which necessarily includes JAMS Rule 6(f), however, the Individual Defendants and FusionStorm clearly and umistakably agreed to allow the arbitrator to decide whether a third party should be permitted to join in the arbitration. *See See Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332-33 (11th Cir. 2005) ("By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."). Where "clear and unmistakable" evidence exists of the parties intent to allow an arbitrator to determine such a question, courts will enforce the delegation by the parties to the arbitrator of

"gateway" questions. *See In Re Checking Account Overdraft Litigation MDL No. 2036*, No. 11-14282, 2012 WL 934054 *2 (11th Cir. March 21, 2012).

Here, the plain language of the arbitration agreements indicates that the Individual Defendants and FusionStorm have agreed that the arbitrator should decide whether Presidio may participate in the arbitration upon either Presidio's request or any of the Individual Defendants' or FusionStorm's request. The terms of the arbitration agreements are not ambiguous; they definitively state that FusionStorm and the Individual Defendants will arbitrate their disputes in accordance with the JAMS Rules. JAMS Rule 6(f) controls how a non-party may join an arbitration and who decides whether the non-party may join the arbitration. In accordance with the terms of the Employment Agreements, therefore, an arbitrator, not this Court, should decide whether Presidio may join the arbitration under JAMS Rule 6(f).[8] *Rent-A-Center*, 130 S.Ct. at 2776 (stating that courts must enforce arbitration provisions according to their terms). In fact, in conformity with JAMS Rule 6(f), JAMS has already tasked the assigned arbitrator with determining the arbitrability issue of Presidio's potential participation in the arbitration (Dkt. No. 75, Ex. A). This is not to say that the arbitrator will decide that Presidio should join the arbitration, just that the arbitrator should be the one to make that decision, not the Court. Accordingly, I recommend that Presidio's motion to compel arbitration (Dkt. No. 23) be granted

---

[8] Furthermore, JAMS Rule 11(a) dictates that once the arbitrator is appointed, the arbitrator resolves disputes as to the interpretation and applicability of the JAMS Rules and conduct at the arbitration hearing, with that decision constituting a final decision. The arbitrator also maintains authority under JAMS Rule 11(c) to rule upon jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which arbitration is sought as well as who constitutes a property party to the arbitration.

to the extent that the arbitrator should decide whether Presidio may participate in the arbitration between FusionStorm and the Individual Defendants.[9]

**B. Stay**

If the Court compels the parties to arbitrate, Defendants request the Court stay these proceedings as to all claims asserted by FusionStorm. As to Lotze, Lytos, Duff, Ramirez, and Presidio, however, FusionStorm contends that it should still be permitted to seek injunctive relief in this forum during the pendency of the arbitration because the arbitration provisions provide for provisional remedies in aid of arbitration in a court of appropriate jurisdiction.[10] In Massachusetts, parties may obtain preliminary injunctive relief in aid of arbitration. *See Scott-Jones v. Lu*, 849 N.E. 2d 809 (Mass. 2006) (noting that a preliminary injunction in aid of arbitration was entered by the trial court). The remaining question, therefore, is whether and to what extent FusionStorm should be allowed to seek injunctive relief in this forum.[11]

---

[9] Furthermore, the Court should deny Presidio's motion to dismiss (Dkt. No. 22) without prejudice since the arbitrator will decide whether Presidio can present its arguments on those claims in arbitration.

[10] Notably, King's arbitration provision does not provide FusionStorm with the option to seek injunctive, declaratory, or any other relief in aid of arbitration. As such, FusionStorm concedes it will not seek injunctive relief from the Court with respect to King (Dkt. No. 43 at 8) and agreed at the hearing on this matter that King should be dismissed from this action. Accordingly, given that King has elected to submit to arbitration pursuant to the terms of her Employment Agreement and FusionStorm consents to her dismissal, King should be dismissed from this action.

[11] As set forth above, the Non-Disclosure, Non-Competition, Non-Solicitation and Developments Agreements and the offers of employment for Lytos, Duff, and Lotze dictate that only FusionStorm may seek provisional remedies in aid of arbitration in a court of appropriate jurisdiction (Dkt. No. 1, Exh. C at 24; Exh. D at 7; Exh. E at 9). The Non-Disclosure, Non-Competition, Non-Solicitation and Developments Agreement and the offers

When a court finds that parties have agreed to arbitrate a dispute, Section 3 of the FAA provides for a mandatory stay of the trial of an action until arbitration has been had in accordance with the terms of the arbitration agreement. 9 U.S.C. § 3. Where litigants advance both arbitrable and non-arbitrable claims, courts have discretion to stay the non-arbitrable claims but generally refuse to stay proceedings of non-arbitrable claims when it is feasible to proceed with the litigation. *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004). The crucial inquiry, however, is whether the arbitrable claims predominate or whether the outcome of the non-arbitrable claims will depend upon the arbitrator's decision. *Id.* In this instance, with the exception of the claims for injunctive relief, the arbitrable claims predominate over any non-arbitrable claims and the non-arbitrable claims depend upon the decisions the arbitrator makes as to the arbitrable claims. As the arbitration provisions indicate, the provisional relief sought by FusionStorm is explicitly provided for and is available only "in aid of arbitration" against the Individual Defendants rather than as a separate, independent cause of action.[12] In accordance with the FAA and Massachusetts law, the arbitration provisions should be construed according

of employment for Ramirez provides that either party may seek provisional remedies in aid of arbitration, however (Dkt. No. 1, Exh. G at 7). Since the Individual Defendants and Presidio do not seek any provisional remedies in this forum beyond their request for arbitration, the issue remains only as to FusionStorm.

[12] It should be noted, however, that nothing precludes FusionStorm from seeking injunctive relief in the arbitral forum. Indeed, the JAMS Rules provide the arbitrator with authority to "grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods." JAMS Rule 24(e). Though the contracts allow FusionStorm to seek injunctive relief in this forum, the more efficient and effective course of action may be to seek injunctive relief in the arbitral forum where the parties' claims are pending.

to their terms. *Rent-A-Center*, 130 S.Ct. at 2776; *Freelander*, 258 N.E.2d at 788. Construing

the arbitration provisions according to their terms means that FusionStorm should be permitted

to seek injunctive relief in aid of arbitration against Lotze, Lytos, Duff, and Ramirez to prevent

any potential irreparable harm which may occur during pendency of the arbitration. Furthermore,

although the JAMS Rules, as incorporated in the arbitration provisions, provide for the proper

mechanism for determining whether Presidio should join the arbitration, the Rules do not speak

to whether injunctive relief should be available for or against such a non-party in this scenario.

As such, nothing prevents FusionStorm from seeking injunctive relief against Presidio, be it in

aid of arbitration or otherwise. Accordingly, I recommend that the case be stayed as to all claims

except FusionStorm's request for injunctive relief in aid of arbitration against Lotze, Lytos, Duff,

and Ramirez and FusionStorm's request for injunctive relief against Presidio.[13]

## C. Discovery

FusionStorm additionally seeks expedited discovery in this matter, which Defendants

oppose (Dkt. Nos. 51, 54, 56, 63). More specifically, FusionStorm requests Presidio submit to

a computer examination and requests all Defendants serve their initial disclosures, provide dates

for depositions, and respond to any written discovery propounded by FusionStorm (Dkt. No. 51

at 8-9). In response, Defendants argue that discovery in this action is inappropriate until the

Court rules upon the pending motions to compel arbitration (Dkt. Nos. 54, 56, 63). In addition,

Lotze moves for a protective order preventing FusionStorm from engaging in any discovery (Dkt.

---

[13] If the arbitrator determines that Presidio should not join the arbitration, the stay
could then be lifted as to Presidio and FusionStorm could proceed in this forum with its other
claims against Presidio only.

No. 63).[14]  Given the foregoing recommendations that the motions to compel arbitration be granted and FusionStorm be allowed to seek injunctive relief in this forum, the motion to compel discovery (Dkt. No. 51) and the motion for protective order (Dkt. No. 63) should be denied without prejudice.  If FusionStorm proceeds to seek injunctive relief in this forum, the undersigned will hold a status conference at which time the parties can discuss the necessity and parameters of any discovery permissible in this action.[15]

### III.    Conclusion

Accordingly, and for the foregoing reasons, it is hereby

**RECOMMENDED:**

1.  Lytos, Duff, King, Ramirez, and Lotze's motions to compel arbitration (Dkt. Nos. 18, 24) be granted.

2.  Presidio's motion to compel arbitration (Dkt. No. 23) be granted to the extent that the arbitrator should decide whether Presidio may participate in the arbitration between the Individual Defendants and FusionStorm.

3.  Presidio's motion to dismiss the complaint (Dkt. No. 22) be denied without prejudice.

---

[14]  Lotze has also indicated his willingness to stipulate to entry of an immediate order by the JAMS arbitrator requiring him to surrender to an independent computer forensics firm in Tampa, Florida, all of his electronic information storage devices that he used in connection with his employment with FusionStorm and that may contain any information belonging to FusionStorm or about FusionStorm, its vendors or suppliers, its employees, or its customers and clients (Dkt. No. 24 at 9).

[15]  If the undersigned conducts a status conference, the parties should be prepared to discuss the effect of Section 7 of the Massachusetts Uniform Arbitration Act, which addresses discovery relating to arbitration and provides that an *arbitrator* may permit discovery.  *See* Mass. Gen. Laws ch. 251, § 7.

4.  FusionStorm be permitted to seek injunctive relief in this forum but the case be stayed as to all other claims against Defendants.

5.  King be dismissed from this action.

6.  The motion to compel discovery (Dkt. No. 51) be denied without prejudice.

7.  The motion for protective order (Dkt. No. 63) be denied without prejudice.

**IT IS SO REPORTED** in Tampa, Florida, this 26th day of April, 2012.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Honorable Virginia M. Hernandez Covington

Counsel of Record